**SO ORDERED.**

**SIGNED this 12 day of October, 2005.**

THIS ORDER HAS BEEN ENTERED ON THE DOCKET.
PLEASE SEE DOCKET FOR ENTRY DATE.

_____
John C. Cook
**UNITED STATES BANKRUPTCY JUDGE**

_____

IN THE UNITED STATES BANKRUPTCY COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION

| | |
|---|---|
| IN RE ) | |
| ) | NO. 04-15922 |
| CONSOLIDATED STONEWORKS, INC., ) | |
| ) | Chapter 7 |
| Debtor ) | |

**M E M O R A N D U M**

This matter is before the court on a motion for payment of a super-priority claim filed by by Resource Equity Group, LLC ("REG"). The motion is opposed by the Chapter 7 trustee and by The Hulsey Foundation ("Hulsey"), a major creditor. Having considered the proof and arguments of the parties, the court now makes its findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

I.

The parties have stipulated to many of the pertinent facts. On September 9, 2004, the debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On October 28, 2004, Hulsey filed a motion seeking the conversion of the case to a case under Chapter 7 of the Code. On November 24, 2004, the debtor filed a motion for approval of a postpetition financing arrangement with REG, which disclosed (twice) that "[t]he DIP Lender group includes persons related to the Management of Debtor" and referred the reader to the attached letter agreement for more information in that regard. That letter disclosed that Betty C. Ashlock was to be the sole member of REG and that she is the mother of Don Ashlock, the Debtor's president. The letter agreement provided for REG to purchase accounts receivable, purchase orders, and inventory at a discount, but did not provide for interest. On December 10, 2004, the court entered an order granting the motion on an interim basis, authorizing the debtor to borrow up to $150,000 from REG with the repayment obligation to be accorded administrative expense status with priority over certain other administrative expenses and to be secured by a security interest in the debtor's assets. REG is a limited liability company that was organized on November 18, 2004.

On November 16, 2004, prior to the time that the court approved the post-petition financing, Betty Ashlock issued a personal check for $100,000 payable to the order of the law firm of Shumacker Witt Gaither & Whitaker. The law firm deposited the check into its trust account and therefore was able to represent to the court at the time of the hearing on the post-petition financing that $100,000 was available for immediate disbursement. Following the entry of the order approving the post-petition financing on December 10, 2004, the law firm, on behalf of REG, issued checks

2

totaling $96,839.35 to certain of the debtor's creditors and to the debtor itself. The trustee and Hulsey do not dispute that REG is entitled to payment of the $96,839.35 pursuant to the interim postpetition financing order.

On or about December 15, 2004, the debtor used Ms. Ashlock's personal JCPenney Mastercard to purchase supplies at a cost of $329.54. On or about January 5, 2005, the debtor used Ms. Ashlock's personal JCPenney Mastercard to purchase additional supplies at a cost of $818.96. On or about January 7, 2005, Ms. Ashlock issued a check on her personal American Express account for $13,700 and delivered it to the debtor. On or about January 10, 2005, Ms. Ashlock issued a check on her personal SonyCard account for $8,700 and delivered it to the debtor. There is no dispute that the foregoing extensions of credit were used by the debtor in its business operations.

Ms Ashlock credibly testified that it was her intent, in issuing checks to the debtor on her American Express and SonyCard accounts and in allowing the debtor to use her JCPenney Mastercard, to fulfill REG's obligation under the postpetition financing order. She further testified that she did not go through the formalities of first paying the monies into an REG account and then disbursing those monies from the REG account to the debtor because the debtor had an urgent need for the credit and she did not think the formalities of the transaction mattered. Both Betty Ashlock and Don Ashlock, who is now currently serving as REG's general manager, testified that REG's books and records reflect the credit card purchases and advances as debts owed to Betty Ashlock. Mr. Ashlock also testified that REG has made the monthly payments on the credit card accounts.

On January 14, 2005, the court conducted a hearing on Hulsey's motion for conversion and, on January 18, 2005, the court entered an order granting the motion. On March 3, 2005, REG filed

a proof of claim asserting a secured claim in the amount of $123,348.50, consisting of the extensions of credit described above plus $3,160.65 in attorney's fees. On March 7, 2005, REG filed the motion presently before the court, seeking the payment of that claim. At the hearing on the motion, REG withdrew its request for payment of the attorney's fees. Neither the motion nor the proof of claim asserts an entitlement to interest. Hulsey filed an objection to the motion on March 18, 2005, and the trustee filed an objection on March 23, 2005, and asserted a counterclaim (which has since been compromised) on March 29, 2005. The parties stipulated that the assets of the estate exceed the amount of REG's lien claim but that, of any sum that the court orders to be paid to REG, $12,000 is to be withheld pending the resolution of a certain adversary proceeding.

II.

The trustee and Hulsey take the position that REG is not entitled to repayment of the advances made to the debtor from Betty Ashlock's credit card accounts because the interim postpetition financing order authorized the debtor to borrow from REG, not Ms. Ashlock, and it was she, not REG, who extended the credit. REG responds that, in substance, REG did extend credit to the debtor, albeit from funds or credit that Ms. Ashlock made available to REG. The court believed Ms. Ashlock when she testified that she intended that the credit she was providing to the debtor was being provided on behalf of REG in accordance with the financing order, even though Ms. Ashlock failed to go through the formalities of channeling the funds or credit through REG directly. There was no valid reason for Ms. Ashlock to extend credit to the debtor on her personal account when the court had authorized Ms. Ashlock to extend credit to the debtor through REG pursuant to the financing order. While it would have been a better practice for Ms. Ashlock to have created a paper

4

trail showing a loan to REG, a deposit of that loan into an REG account, and then an REG check written to the debtor, the lack of such a paper trail does not automatically lead to a conclusion that Ms. Ashlock was acting in her personal capacity when the credit at issue was extended to the debtor.

It must be kept in mind that Ms. Ashlock was the sole member of REG and that as such she wore two hats when she made the loans under scrutiny here. In her capacity as a private person, she offered to lend money to REG; and at the same time, in her capacity as REG's sole member, she was the only person who could accept the money and commit REG to repay the loan. Tennessee clearly recognizes the validity of oral contracts, *Calabro v. Calabro*, 15 S.W.3d 873, 875-76 (Tenn. Ct. App. 2000) (recognizing oral promise to pay tuition as valid); *Squibb v. Smith*, 948 S.W.2d 752, 755-56 (Tenn. Ct. App. 1997) (recognizing oral agreement among guarantors to apportion debts amongst themselves), and so Ms. Ashlock's two hats, as it were, could conclude an oral loan agreement between herself and REG. After all, who else but herself, as REG's only member, could she negotiate and agree with about the loan? Therefore, if she was resolved, as the principal of REG, to treat her personal money as a loan to REG – and the court credits her testimony on this question – then, as REG's only member, she could facilitate the transfer of those moneys to the debtor in any way she chose, including the direct deposit of personal checks to the debtor's account.

The trustee relies on cases declining to accord administrative expense status to claims by insiders for the repayment of postpetition advances made outside the ordinary course of business and without court authorization. *In re Ockerlund Constr. Co.*, 308 B.R. 325, 329-30 (Bankr. N.D. Ill. 2004); *In re Blessing Indus., Inc.*, 263 B.R. 268, 273-74 (Bankr. N.D. Iowa 2001); *In re Spears*, 49 B.R. 803, 805 (Bankr. E.D. Tenn. 1985). However, Betty Ashlock is not asserting such a claim;

rather, it is REG – from which the debtor *was* authorized to borrow – that is asserting the claim. The court views the transactions as REG, by its sole member, causing the credit to be extended pursuant to and in accordance with the interim postpetition financing order. *Cf. Shives Concessions, Ltd. v. Pugh Shows, Inc. (In re Pugh Shows, Inc.)*, No. 03-8056, slip op. at 12 (B.A.P. 6th Cir. Mar. 17, 2004) (treating equipment lessor as having performed obligation to provide equipment to debtor even though equipment was owned by lessor's LLC). This view is in accordance with the actual effect of the transactions and the uncontradicted intent of both Ms. Ashlock and REG (as shown by the fact that it carries the transactions on its books as liabilities to Ms. Ashlock and that it has made payments on Ms. Ashlock's credit card accounts).

Thus, the court will grant REG's motion. However, REG's request for interest pursuant to 11 U.S.C. § 506(b) presents several issues not yet addressed by the parties. Those issues include (1) whether § 506(b) applies to postpetition financing obligations, (2) whether REG's claim is oversecured, as the security interest attached to the letter agreement evidencing the financing arrangement appears to be more limited than was authorized by the order granting interim approval of the financing, and (3) whether § 506(b) requires the payment of interest when there is an agreement creating the security interest and that agreement does not provide for interest but provides only for an "up front" discount.

### III.

For all the foregoing reasons, the court will enter an order granting REG's motion for payment of its super-priority claim in the principal amounts set forth the parties' stipulation, excluding the attorneys' fees in the amount of $3,160.65. The court will not award interest at this

time, but will require supplemental briefs in that regard, addressing issues including those identified above.

###